A. D. PUGH, Appellant, v. A. D. BOTHNE Co. et al., Appellees.

PROCESS:   Nonresident Corporation—"Agency"—Breach of Warranty.   When a nonresident corporation maintains an agency in this state, service of process, in any action growing out of or connected with such agency, may be made on such corporation by serving the agent in charge.   Contract reviewed, and held to create an agency in this state, and to authorize service on defendant by serving the agent in an action for breach of warranty growing out of such agency.   (Section 3532, Code, 1897.)

*Appeal from Polk District Court.*—CHAS. A. DUDLEY, Judge.

THURSDAY, NOVEMBER 23, 1916.

ACTION for damages for breach of warranty in the sale of an automobile.   The principal defendant is the Great Western Automobile Company, a nonresident corporation. The only service of original notice on such defendant was made upon an alleged agent in Des Moines.   Such defendant appeared specially and denied the agency, and likewise the validity of the service and the jurisdiction of the court.   The trial court sustained such plea in denial of its jurisdiction, and discharged the defendant.   The plaintiff appeals.—*Reversed.*

A. D. *Pugh,* for appellant.

No appearance for appellees.

EVANS, C. J.—We have no brief for appellees. It appears from the record that the plaintiff purchased a Great Western automobile from A. D. Bothne, who was a regular dealer at Des Moines, Iowa. He purchased the same under an alleged warranty purporting to have been made by the manufacturer, the principal defendant. The one question involved in this appeal is whether Bothne and his place of business was an agency of the principal defendant, within the meaning of Code Section 3532, so that jurisdiction could be acquired over the principal defendant by service of original notice upon Bothne. Section 3532 is as follows:

PROCESS: non-resident corporation: "agency:" breach of warranty.

"When a corporation, company or individual has, for the transaction of any business, an office or agency in any county other than that in which the principal resides, service may be made on any agent or clerk employed in such office or agency, in all actions growing out of or connected with the business of that office or agency."

It appears that Bothne was operating under the following written contract:

"This agreement, made this 19th day of September, 1912, at Peru, Indiana, between the Great Western Automobile Company, a corporation, party of the first part (hereinafter called the manufacturer), and A. D. Bothne, of Des Moines, Iowa, party of the second part (hereinafter called the dealer), witnesseth:

"1.   That the manufacturer hereby grants unto said dealer the exclusive right of sale of new Great Western automobiles in the following described territory, to wit: Polk, Story, Hamilton, Wright, Franklin, Hardin, Marshall, Tama, Grundy, Butler, Bremer, Black Hawk, Buchanan, Benton, Madison, Warren, Marion, Mahaska, Wapello, Davis, Appanoose, Wayne, Lucas, Clarke, Decatur, Union, Ringgold, Monroe, Adair, Adams and Taylor Counties, state of Iowa, and further agrees not to sell new Great Western automobiles within the aforesaid territory except to the dealer.

"2.  The dealer, on the other hand, agrees not to solicit orders for, nor sell nor deliver any Great Western automobiles outside of the territory above described, without first obtaining consent in writing from said manufacturer.

"3.  As a part of the consideration for the granting of the exclusive right of sale aforesaid, the dealer agrees to push the sale of Great Western automobiles to the best of his ability within the territory aforesaid, employing a sufficient number of salesmen to cover the territory thoroughly.

"4.  For the proper handling of the Great Western line, the dealer agrees to provide in the city of Des Moines a building suitably located and arranged for the conduct of business, containing a salesroom or repository of sufficient size to display the complete line.  The dealer also agrees to maintain in addition, a well equipped repair shop, with a competent mechanic in charge at all times, so that purchasers of Great Western cars can have same repaired and adjusted promptly and at reasonable rates.

"5.  The dealer agrees to make no contracts for the sale of Great Western automobiles with other parties acting for such dealer in said territory, without filing promptly with the manufacturer copies of all contracts so made, so that it may have a complete record and a full knowledge of the conditions and volume of the business in every locality.

"6.  The manufacturer hereby agrees to sell to the dealer Great Western cars with catalog equipment at the following discount rates:  As each quantity is reached, a rebate will be made 25 per cent on cars previously purchased at the lower discount.  The list price on the two-passenger, four-passenger touring car and five-passenger touring car, is $1,585, and the four-passenger Sedan is $2,250, with equipment as listed in the catalog.  Shipments are f. o. b. Peru, Indiana.

"7.  A discount of 20 per cent from the published list, or catalog prices, shall apply on parts and accessories (except such parts are listed at a net price) f. o. b. Peru, Indiana.

"8.   The manufacturer reserves the right to change the list price mentioned in this contract upon two weeks' notice in writing, duly mailed to the dealer.

"9.   The manufacturer shall not be liable for any failure of performance on its part when said failure of performance shall be due to fire, strike, insurrection or other causes beyond its control.

"10.   The dealer hereby orders and agrees to take and pay for not less than two Great Western cars.

"11.   The dealer has deposited with the manufacturer the sum of $100 a car on the one car ordered as above.  Said sum will be credited by the manufacturer to the dealer and will be delivered and paid for, except that any part or all of said deposit may, at the option of the manufacturer, be credited against any parts or upon accounts due the manufacturer from the dealer, and the balance, if any, will be credited pro rata on each car taken.

"12.   The balance of the price of each over and above the amount to be paid and credited against it as aforesaid shall be paid at the time of shipment, or on presentation of sight draft with bill of lading attached.

"13.   The manufacturer guarantees its automobiles against manifest defects and agrees to replace free of charge (if reported within one year from date of sale to the customer) any part of such automobile made by it, showing defective material or faulty workmanship, provided that such part or parts claimed to be defective are returned, charges prepaid, to the manufacturer, at Peru, Indiana, for examination and inspection.  The decision of the manufacturer in all cases of claims shall be final and conclusive.  Claims on account of defective parts not made by the manufacturer, such as tires, coils, batteries or other equipment, shall not be made against said manufacturer, but shall be against the maker thereof only.  Repair parts returned for inspection or credit should be addressed to the Claim Department, Great Western Automobile Company, Peru, Indiana, and

should be plainly tagged with the name and address of the shipper, and a list of all parts returned included with the shipment.

"14. Under no circumstances will the Great Western Automobile Company allow bills for repairs made by other parties, nor has any agent, salesman or representative authority to contract such bills or authorize payment of same.

"15. It is understood and agreed that this contract shall not in any respect make the dealer agent for the manufacturer to transact any business in its name or for it in any form, it being intended and expressly agreed that this contract is simply to give the dealer exclusive right to sell Great Western automobiles in the territory hereinbefore specified.

"16. The dealer agrees to keep in stock, at all times during the term of this agreement, at least one automobile produced by the manufacturer, for the sole purpose of demonstrating and exhibiting to intended purchasers, and will maintain same in good order and repair.

"17. The responsibility of the manufacturer for any and all loss or damage to automobiles or other goods shall cease upon delivery thereof by the manufacturer to a railroad, express company or other common carrier, or to the dealer or his representative.

"18. The manufacturer, in the event of the specifications being furnished reasonably in advance (barring strikes or other unavoidable causes), will use its best endeavors to supply the dealer; but it is distinctly understood that no liability shall attach to the manufacturer in the event of failure to do so for any cause.

"19. The dealer further agrees that accounts for parts shall be due and payable on the tenth of each month for all parts shipped during the preceding months.

"20. This contract expires by limitation July 1, 1913, or may be canceled by either party upon written notice served by mail or otherwise. Advertising allowance of $10.88 to be

allowed on each car. Repair parts on consignment to be furnished when properly secured.

"21. In witness whereof, said parties have hereunto set their hands and seals, the day and year first above written.

"Great Western Automobile Company,

The Manufacturer.

"E. Mack Morris, General Manager; A. D. Bothne, Dealer.

"Contract negotiated by R. W. Phelps, Salesman."

It will be noted from this contract that it contemplates the purchase of cars from time to time by the dealer from the manufacturer. The theory of the defendant, therefore, appears to be that the relation between it and the dealer is that of seller and purchaser. It appears to be further assumed that the existence of such relation completely negatives the relation of principal and agent. The error, if any, is in this latter assumption. There is no necessary antagonism between the relation of purchaser and seller and that of principal and agent. An agent may buy from his principal, and yet maintain in other respects the relation of an agent. In this case, although the dealer agreed to purchase, he did so for the purpose of a re-sale. He was not a purchasing customer, in the ordinary sense. The ultimate customer for the vehicle was to be found by the dealer. The dealer was not even purchasing at wholesale, in the ordinary sense. He was not in the market buying automobiles in quantities where he could buy the best. The foregoing contract contains 21 specifications. Comparatively few of them deal with the relation of purchaser and seller. If no other relation than that of purchaser and seller was contemplated, then many of the provisions of the contract are not only unnecessary but are impertinent. The dealer binds himself therein to certain conduct in the handling of the product of the manufacturer even after its purchase. He undertakes to furnish a place for the exhibition of the product of the manufacturer. He receives

its literature and distributes its advertising. He delivers its printed warranties to his retail customers. He is entitled to the benefit of the advertising of the manufacturer, and the manufacturer is entitled to the benefit of his diligence in pushing sales, to the end that the business of the manufacturer, as well as that of the dealer, may be increased. All these matters are fairly within the contemplation of the contract. For the given territory, the manufacturing company binds itself to confine its product exclusively to this dealer, and to come in touch with the retail customer through him alone.

Construing this contract in the light of ordinary practical sense, Bothne was the ''dealer'' of the Great Western Automobile Company, and was its sole representative in the specified territory to all retail purchasing customers. We think, therefore, that he and his place of business constituted an agency of the principal defendant, within the meaning of our statute above quoted. It is the manifest policy of our law that all persons or corporations, both nonresident and otherwise, who do business with the citizens of the state, and perchance sell goods to them upon the faith of representations and warranties, shall become amenable, as far as practicable, to the jurisdiction of the Iowa courts. Were it otherwise, outside corporations could do millions of dollars' worth of business with our citizens upon the faith of promises and guaranties, and yet, in a practical sense, be amenable to no law for any breach. The suit involved herein is based upon a transaction growing out of the Bothne agency. We think, therefore, that the plaintiff was entitled to make service of notice upon the defendant, in accordance with the section of the statute above quoted. See *Locke v. Chicago Chronicle Co.,* 107 Iowa 390.

For this reason, this order of the trial court must be— *Reversed.*

DEEMER, WEAVER and PRESTON, JJ., concur.