T. F. Duhigg, Appellee, v. Waterloo Gasoline Engine Company et al., Appellants.

PROCESS: Service in Actions Growing out of Agency. An action may not be said to "grow out of" or "be connected with" an office or agency because of the fact that, after the purchase of the article *directly from the maker*, the agent (1) sold repairs to the purchaser and (2) attempted to remedy defects in the article. (Section 3532, Code, 1897.)

PROCESS: Dealer (?) or Agent (?) One who, under a contract for the exclusive sale of an article in a given territory, makes C. O. D. purchases of the manufacturer, and sells at his own price, with a claim to a portion of the difference between the retail and wholesale price, in case his exclusive right is violated, and who attends to the manual delivery and replacement of defective parts furnished by the manufacturer under his warranty against defective material or workmanship, is a *"dealer,"* and not an *"agent,"* in the sense that service may be made on him in an action against the manufacturer growing out of a purchase from the latter. (Section 3532, Code, 1897.)

PROCESS: Agency and Action Arising out of. Evidence reviewed, and held insufficient to show that one on whom service was made was other than a "dealer," and that, if agency be conceded, nevertheless the action did not "grow out of" nor was it "connected with" such agency.

*Appeal from Polk District Court.*—Thomas J. Guthrie, Judge.

JULY 17, 1920.

MOTION to set aside services of original notice and judgment was overruled. The defendants appeal.—*Reversed.*

*Charles F. Maxwell* and *Myron H. Cohen,* for appellants.

*Mulvaney & Mulvaney,* for appellee.

LADD, J.—I. About March 6, 1918, plaintiff, in his petition, claimed to have purchased of defendants a "Waterloo Boy Tractor" for $1,150; that he had paid out for freight, additional parts, and labor to put the machine in condition, amounts aggregating $79.56; that the tractor was represented to plow from 8 to 10 acres a day, but was unable and unfit to do so; that the seller was unable to put it in condition, and that, instead, plaintiff was able to plow only about 100 acres during the plowing season; that, if it had plowed as represented, he would have plowed 22 acres additional, and intended so to do and to put the land in corn; but, owing to the condition of said tractor during the last four days used, though operated by experts, it was unable to plow more than 6 acres; whereupon, plaintiff tendered the return of the machine, and prayed that the contract of purchase be rescinded, and that he be reimbursed for the amounts paid out, as stated, and for $1,500 as damages. Original notices were served on the alleged agents of defendants, in accordance with the requirements of Section 3532 of the Code. On January 4, 1919, the court found defendants to be in default, and, on May 2d following, adjudged each defendant to be in default; and, on May 7th of the same year, entered judgment for damages in the sum of $1,800, and declared the contract rescinded. Each defendant filed a motion, June 26, 1919, asking that the original notice be set aside and the judgment vacated, on the grounds that such service did not give the court jurisdiction to enter default or judgment, for that G. Mc-

1. PROCESS: service in actions growing out of agency.

Clelland, the alleged agent of the Waterloo Gasoline Engine
Company, was not, at the time, and never had been, an
officer, agent, representative, or employee of the Waterloo
Gasoline Engine Company, and that C. S. Denny, on whom
the notice to the John Deere Plow Company was served,
was not then, and never had been, an officer, agent, repre-
sentative, or employee of the said John Deere Plow Com-
pany. The sole inquiry is whether the court acquired juris-
diction of the defendant companies by the service of the
original notice on these persons. Section 3532 of the Code
provides:

"When a corporation, company, or individual has, for
the transaction of any business, an office or agency in any
county other than that in which the principal resides, serv-
ice may be had on any agent or clerk employed in such
office or agency, in all actions growing out of or connected
with the business of that office or agency."

It appears that the plaintiff, on March 6, 1918, signed
an order as purchaser from the Waterloo Gasoline Engine
Company of one Model N tractor, at $1,150. This was en-
dorsed by "F. M. Culbertson, salesman," and a check drawn
by plaintiff for $100, payable to the company, was mailed
with the order. The tractor was shipped to plaintiff from
the company's factory at Waterloo, and the bill of lading,
accompanied with a sight draft for the balance of the
purchase price, sent to the People's Savings Bank of Des
Moines, and there paid by the purchaser, who, obtaining the
tractor, took it to his farm. Up to this time, McClelland
had nothing whatever to do with the sale, delivery, or pay-
ment of the machine, and these did not grow out of, nor
were they connected with, the business he was conducting
at Polk City. McClelland complained that, as all of Polk
County north of Des Moines had been set apart as territory
in which he had the exclusive sale of tractors of the com-
pany, plaintiff should have purchased of him; but there is
no pretense that the deal grew out of, or was in any manner
connected with, McClelland's place of business at Polk City.
This conclusion is not obviated by the circumstance that

McClelland sold plaintiff parts to be used on the tractor, or that he attempted to remedy matters with the tractor. None of plaintiff's claim grew out of McClelland's efforts, and there was no evidence that any orders for parts were made on the company through McClelland. Even though the company maintained an office or agency at Polk City then, this action neither grew out of nor was connected with the business of such office or agency, and for this reason the service of the original notice on McClelland was not good. See *Barnabee v. Holmes,* 115 Iowa 581; *State Ins. Co. v. Granger,* 62 Iowa 272; *Winney v. Sandwich Mfg. Co.,* 86 Iowa 608.

II.   But the Waterloo Gasoline Engine Company did not maintain such an office or agency in the territory which included plaintiff's farm.   McClelland had his place of business at Polk City, where he handled carriages, automobiles, tractors, and engines since January 15, 1917, and during 1918.

2. PROCESS: dealer (?) or agent (?)

He handled the tractors of the Waterloo Gasoline Engine Company at that place.   When he sold one of these tractors, he made out an order therefor, and mailed it, with his check for $100, payable to the company, and the tractor was shipped to him, with sight draft for balance attached to bill of lading, and he paid this on delivery.   He had in his possession none of the company's property.   The company warranted all parts of the machine as to material and workmanship during the first year, and forwarded new parts upon the return of those which were defective, and McClelland attended to replacing these.   The parts were shipped invoiced to him, for which he remitted in time to obtain a discount.   He purchased at the company's prices, and sold at those of his own choosing.   There was no agreement between them under which he was to receive salary or commission, or other compensation.   Under oral agreement with the company's agent, he was to have the exclusive sale of tractors within Polk County north of the city of Des Moines, the agent saying that, if someone else should sell in such territory, he was to receive a part

of the difference between the wholesale and the retail price
of the tractor sold; and, as the sale of the tractor was in his
territory, he had claimed what had been promised, denom-
inating it a commission. He explained that he had handled
goods in no other manner, and thought himself a dealer,
and not an agent. J. E. Johnson, in charge of the com-
pany's business at Waterloo, testified that McClelland, as
dealer, looks after a tractor which is claimed after sale to
be defective, and that parts to replace those found to be
defective are shipped to him, without awaiting the return
of the defective parts, and that it was his duty to look
after the tractors in his territory during the year. But the
only testimony as to warranty was that there was a "war-
ranty as to parts as against defective material and work-
manship for within one year from the sale of the tractor. If
a part breaks because of defective material or workmanship,
we furnish a new part, on board cars at factory, free, with-
out charge, to replace the old part, on condition that the old
part is returned to the factory and found to be defective."
The company performed its obligation. in furnishing the
parts, and what else he did was as dealer. Both McClelland
and Johnson deny that McClelland was employed in any
manner by the company, and this was not denied. Some
evidence that McClelland had declared himself an agent of
the company was adduced; but nothing is better settled
than that agency may not be proven against another than the
declarant by the declarations of an alleged agent. The
agent upon whom service may be made must be the agent
in fact, having representation and derivative authority.
*Wold v. Colt Co.,* 102 Minn. 386 (114 N. W. 243). To con-
stitute one person the agent of another, the former must
have been authorized by the latter to act in some respect
for him; and, as McClelland was not so authorized, he was
not agent of the Waterloo Gasoline Engine Company, and
service of the original notice on him as agent of said com-
pany gave the court no jurisdiction over it.

III.  Default was entered against the John Deere. Plow
Company on service of the original notice on it through its

alleged agent, C. S. Denny.  Our inquiry is limited to the
issues (1) whether Denny was such agent,
and, if so, (2) whether the transaction grew
out of or was connected with such agency.
It appears that the John Deere Plow Com-
pany occupied a four-story building at Southwest Ninth
and Tuttle Streets in Des Moines.  Thereon were the signs
of that company, and stored therein were its implements.
These were in the care of one Johnson, who received the
company's manufactured products, and shipped the same
out as ordered.  Such occupancy has continued several
years.  During this time, W. S. Denny Company, composed
of Denny and his wife, has had an office in the building, and
has been selling at retail the company's products within
the city of Des Moines.  On March 15, 1918, nine days after
the order was given by plaintiff, Deere & Company became
owner of all the capital stock of the Waterloo Gasoline
Engine Company.  Deere & Company appears to be the hold-
ing company of the capital stock of the defendant, which is
a sales organization, and also of the stock of another cor-
poration of the same name, engaged in manufacturing the
products defendant puts on the market.  At and prior to
the deal with plaintiff, a portion of the warehouse was set
apart to and occupied by the Waterloo Gasoline Engine
Company with implements manufactured by it.  After the
transfer of its stock, its products were put on the market
through the John Deere Plow Company, defendant herein.
Denny testified that he was not agent, and acted in no
manner for the John Deere Plow Company; that he paid
no rent for the premises occupied by him; that the firm of
W. S. Denny Company bought and paid for all goods sold
by it; that Culbertson was traveling agent for the Water-
loo Gasoline Engine Company, and that, as he had to go
away, he telephoned the witness to get a contract from his
house for plaintiff to sign, and also to have him sign a
check for $100, payable to the company, which he did, and
forwarded said contract to Culbertson; that plaintiff had
submitted to him a list of horse-drawn and of tractor-drawn

3.  PROCESS:
    agency and
    action aris-
    ing out of.

implements, for prices on each, and inquired concerning tractors, and asked to meet Culbertson, to whom the witness introduced him; that he did not handle the goods of the Waterloo Gasoline Engine Company until the fall of 1918, and was not aware that that company was referring to him as agent of the John Deere Plow Company; that he did not sell or assist in selling the tractor to the plaintiff. The witness thus explains the method of doing business:

"If I want a wagon, I give an order to the Deere Company to deliver to John Jones a wagon, and sign my name to it. The order first goes to that office, and the workman delivers the wagon to Jones, and reports the order to the factory, and the factory bills it to me, and I pay for it. The order I give is an order for a wagon, or whatever I may not have in my stock. The order directs the Deere Company to ship to John Jones, and, when the company ships to John Jones, it charges that wagon to my account, and the Deere Company then bill me in the regular way, and I pay for it. I collect for the wagon sold to John Jones. I put my money in the bank to the account of W. S. Denny Company. Q. Does any money for any goods you sell go to the account of the John Deere Company? A. No, sir, absolutely not."

Hammer, cashier of the John Deere Plow Company, testified that he paid the help of said company, and that Denny was not on its payroll, and that he had not been one of its employees, but that he had nothing to do with the adjustments of agents' commissions; that Denny was a retailer; and that neither he nor W. S. Denny Company sells or has sold implements otherwise than as dealers. The order signed by plaintiff as purchaser and Culbertson as salesman was addressed to the Waterloo Gasoline Engine Company, and directed that company to ship from Waterloo to Des Moines at once, sight draft for $1,050 attached to bill of lading, one Model N tractor complete. It was so shipped, and, upon payment of sight draft for the balance of the purchase price, delivered to plaintiff. The latter testified that, in a conversation in February of 1918, Denny informed him

that he was agent of the John Deere Plow Company; that Denny, when the order was signed, recommended the tractor as the best in the world, and that he was handling it; that, upon the arrival of the tractor, Culbertson and Denny set it up, and drove it to his farm; that Denny told him he was agent of both defendants (though Denny denied having so stated), and that they were really one organization; that witness went to the warehouse to buy, and had never before heard of the Waterloo Gasoline Engine Company; that Denny introduced Culbertson as an expert, to explain certain features of the tractor with which he was not familiar; that he bought the tractor of Denny, who, as he supposed, was agent of the John Deere Plow Company; and that, though the order was on the other company, and the price paid to it, he supposed that the other company was consolidated with said company.

As pointed out, the declarations of Denny, even if made, are not sufficient to establish agency of himself or of W. S. Denny Company; nor was the letter of the Waterloo Gasoline Engine Company to plaintiff, designating him "the agent for John Deere Plow Company goods." The evidence other than the written contract between Denny and the John Deere Plow Company does not warrant the inference that the former was other than a dealer in the implements sold by the former within the city of Des Moines, or that their relations were not those of seller and purchaser. Though Denny, by himself or through W. S. Denny Company, handled the company's implements, there is no room to say that he did so as agent in any respect. Occupancy of its property cannot be ascribed otherwise than to convenience, and the relation of agency is not to be inferred therefrom.

IV. But the relations of Denny to the John Deere Plow Company were covered by a contract, entered into each year, including 1918. This contract was much like that considered in *Pugh v. Bothne Co.*, 178 Iowa 601. The court there ruled that, even though the defendant therein was a dealer and an automobile company seller, this did not pre-

clude the conclusion that the former was agent of the latter, and that the matter in controversy grew out of such agency. Conceding, for the purposes of the case, that it is ruled by the above decision, we do not find that the sale. of the tractor grew out of or was in any manner connected with such agency. In so far as appears from the record, the Deere Company had no interest in the Engine Company, prior to acquiring all its capital stock, March 15, 1918, and defendant John Deere Plow Company, which was a sales organization, is not shown to have undertaken the handling of the Engine Company's products, prior to August 1st following. Though the secretary of the Engine Company swore that Denny was a dealer in its products at the time of the sale to plaintiff,—and the trial court might have so found, though Denny denied it,—still there was no evidence that the defendant John Deere Plow Company was concerned in the handling or sale of the tractor or other products of the Engine Company prior to August 1, 1918, or that anything Denny may have done in connection with the tractor was as agent or dealer for the John Deere Plow Company. There is no pretense that Culbertson was acting for the latter. The order, together with plaintiff's check, was forwarded directly to the Engine Company, and, if Denny negotiated the sale or assisted therein, it was not as representative of the John Deere Plow Company, and the tractor did not pass through its warehouse. There is no room to say, then, that the controversy grew out of or was connected with such agency, if any, as that company maintained in the city of Des Moines. Our conclusion is that the motion to set aside the service of the original notice and vacate the judgment should have been sustained.—*Reversed.*

WEAVER, C. J., GAYNOR and STEVENS, JJ., concur.