400 P.2d 125

SAFEWAY STORES, INC., an Arizona corporation, doing business in the State of Arizona, and Antonio Carmona and Herlinda Carmona, his wife, Appellants,

v.

Geronimo RAMIREZ and Marie Ramirez, his wife, Appellees.

2 CA–CIV 33.

Court of Appeals of Arizona.

March 24, 1965.

Rehearing Denied June 23, 1965.

Spaid, Fish, Briney & Duffield, Tucson, by Richard C. Briney, Tucson, for appellants.

John Pintek, Bisbee, for appellees.

MOLLOY, Judge.

This is an appeal from an order of the trial court refusing to set aside default and default judgment in a "slip and fall" case.

The facts pertaining to the entry of default and default judgment, viewed in a light favorable to the trial court's decision, are these:

(1) On October 29, 1960, the plaintiff was injured while a customer in the defendants' store in Douglas, Arizona. She was sent by the assistant manager of the store to a hospital for treatment and a written report of the accident was forwarded to the Phoenix divisional office of the defendant, which in turn was forwarded to the insurance carrier for the defendant.

(2) On January 23, 1961, a complaint was filed by the plaintiff in the Cochise Superior Court, alleging that the plaintiff was injured by reason of the negligence of the defendant. The complaint and summons named as defendants: "Safeway Stores, Inc., a corporation, doing business in the State of Arizona; and John Doe and Jane Doe, his wife, and Richard Roe and Regina Roe, his wife, defendants."

The complaint stated that the true names of the defendants Doe were unknown to the plaintiff, that the "defendants, John Doe I and John Doe II were in the employ of defendant Safeway Stores, Inc., in their respective capacities of manager and clerk."

(3) On January 27, 1961, a copy of the summons and complaint was left with the defendant Antonio Carmona, who at all times concerned was the manager of the store in question. As manager, Mr. Carmona was authorized to hire and fire employees and generally to conduct the operations of the Douglas Safeway Store, which was as large as any retail store in the Douglas area, having a gross business in excess of one million dollars per year. At the time of leaving the summons and complaint with Carmona on January 27, 1961, the deputy sheriff informed Carmona that service was being had upon him as manager of the Safeway Store and that the papers were for the corporate defendant. However, on the back of the summons which was left with Carmona, the name of Carmona and of his wife were written in as the persons upon whom the papers had been delivered.

(4) On January 27, 1961, Carmona telephoned a Mr. Fernal, who was the appropriate officer of the corporate defendant in the divisional office in Phoenix to handle such matters, and informed him of the suit. This officer instructed Carmona to send the papers directly to him in Phoenix for handling. Carmona did so, and used a mail delivery service of the defendant corporation rather than U. S. mails. In the ordinary course of Safeway's business, the papers should have been delivered to Fernal in Phoenix the next day.

(5) On January 31, the deputy sheriff returned and delivered two more copies of the summons and complaint to Carmona and indicated to Carmona that both he and his wife and the corporate defendant were being served.

(6) On February 7, 1961, a return of service was filed with the clerk of the superior court, which service indicated that process had been served upon: "Antonio Carmona, mgr. Safeway Stores, Douglas, Arizona and Herlinda Carmona, his wife." The return indicates fees charged for three services of process. In the return it is indicated that the persons to whom copies were delivered were: "Antonio Carmona, manager Safeway Stores, Inc., Douglas, Arizona, and Herlinda Carmona, his wife."

The summons left with Carmona on January 27 was admitted in evidence at the hearing on the motion to set aside default judgments. It showed that the defendant Safeway Stores, Inc., had been served by leaving copies with both Mr. and Mrs. Carmona.

(7) Within a few days after sending the papers to Phoenix, Carmona received them back in the inter-company mail. There was no communication of any kind accompanying the return of the summons and complaint. Carmona filed them away and did nothing more about them.

(8) The papers were never received by Mr. Fernal in Phoenix and he did nothing more about the matter until informed of the default judgment. There was no explanation made as to why he did not receive the envelope addressed to him by Carmona except that it was Mr. Fernal's "assumption" that the envelope addressed to him had been opened by secretarial or clerical personnel and mistakenly returned to Douglas Safeway Store. Testimony of secretarial and/or clerical personnel was not offered to the trial court in either affidavit or oral testimony form.

(9) On February 21, 1961, default was entered and on February 23, 1961, judgment was entered against Safeway Stores, Inc., and Antonio Carmona and Herlinda Carmona, his wife, for the sum of $15,000.00 and costs.

(10) On March 1, 1961, Carmona learned of the judgment and immediately notified Mr. Fernal in Phoenix by telephone.

(11) On March 27, 1961, there was filed a motion to set aside default and default judgment. There was no explanation of any kind made to the trial court as to why there was a delay of 26 days between the time of learning of the default judgment and of the filing of the motion to set the same aside.

On appeal, the contentions are made that Carmona was not a "managing or general agent" of the defendant Safeway Stores and that therefore service upon him for the corporate defendant was invalid, that service was never obtained upon either Carmona or his wife, and that the trial court abused its discretion in refusing to set aside the default and default judgment for the reason that the same had been entered against all defendants through their excusable neglect.

▆▆▆ As to the validity of the service upon Safeway, this court rejects the contention that Carmona, was not a "managing agent" of the corporate defendant within the contemplation of Rule 4(d) 6, R.C.P., 16 A.R.S. In Schering Corporation v. Cotlow, 94 Ariz. 365, 385 P.2d 234 (1963), our Supreme Court has adopted the test as to whether or not an employee is a "managing or general agent" as being whether "the agent is of such character and rank so that it is reasonably certain the defendant will receive actual notice of the service of process." This store manager falls within this concept. The court believes that the word "managing" still has some significance, and in this connection, Carmona was the manager for the defendant of a substantial business operation and exercised considerable discretion for the corporate defendant in so doing.

▆▆▆ Attack is made upon the service upon the Carmonas, as individuals, both on the basis that Rule 10(f), R.C.P., though permitting defendants to be sued by fictitious names, requires that the pleadings and/or the process must be amended when the true name is ascertained, and on the basis of a defective sheriff's return of service. In this case there was no amendment to the pleadings to show the true

name of the defendants Carmona. However, the evidence was undisputed that the deputy sheriff who purported to make service upon them wrote in both of their names on the back of the copy of the summons which was delivered. A reading of the complaint gives notice that the manager of the store and his wife are being individually sued. The fact that Carmona received three copies of the summons and complaint are among the factors that should have put him on notice.

The return of the deputy sheriff is confusing. However, our rules of practice in this regard are liberal. Rule 4(g), R.C.P., provides, in part: "Failure to make proof of service does not affect the validity thereof." Rule 4(i), R.C.P., provides for amendments of process or proof of service, as follows:

"At any time in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued."

A comment upon this rule is found in 2 Moore's Federal Practice, § 4.44, p. 1295.55:

"Since the facts stated in the proof of service are not conclusive and since the failure to make proof of service does not affect the validity of the service it would seem that proof of service may be freely amended."

Our Supreme Court has held that:

"Failure to formally amend the pleadings will not affect a judgment based upon competent evidence. If an amendment to conform the pleadings to the proof should have been made, an appellate court will presume that it was so made to support the judgment." Electrical Advertising Inc. v. Sakato, 94 Ariz. 68, 71, 381 P.2d 755, 756 (1963).

This same quotation is applicable to defendants' contention that the service upon the Carmonas is fatally defective because the John Doe summons and complaint was not amended in the trial court, as permitted by Rule 10(f), R.C.P.:

"When the name of the defendant is unknown to the plaintiff, the defendant may be designated in the pleadings or proceeding by any name. When his true name is discovered the pleading or proceeding may be amended accordingly."

We are dealing with form, not substance, in considering these defendants' contentions. The transcript of the hearing on motion to set aside default and the affidavits filed in the lower court when considered in connection with the wording of this summons and complaint convinces this appellate court that it was clear to Antonio Carmona that he and his wife were being personally sued and that he was being served with papers, not only for his corporate employer, but for himself and wife.

■ The appellants have cited no law holding that when service is made in pursuance of Rule 10(f), R.C.P., there need be any additional time given to answer before the pleadings may be amended to show the true name of the defendants. It must be remembered that we are dealing with a default situation, where there has been no answer or appearance of any kind by the defendant served. To give additional time would be futile unless some kind of new service or notice were given. This court holds that our rules of procedure do not require that such be done.

■ On appeal, an attack is also made particularly upon the service of Mrs. Carmona. The contention is that service was attempted by delivering a copy of the summons and complaint to her husband at the Safeway Store in Douglas, in her absence, and that this is not a compliance with Rule 4(d) 1, R.C.P. This rule provides that service may be had by " * * * leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein * * *."

This court agrees with the contention that if service were attempted on the wife by leaving copies with the husband at his place of business, the service would be invalid. However, this point was never raised in the lower court. An examination of the pleadings filed with the lower court indicates that the only contention made to the trial court insofar as service upon Mrs. Carmona is concerned were exactly the same as the contentions made as to why the service upon Mr. Carmona was alleged to be invalid. No importance was apparently attached to any difference in position between these two defendants.

This court is a firm believer in giving a trial court an opportunity to properly rule upon matters in litigation. This was not done in this case and therefore this court will not consider this contention. Smith v. Rabb, 95 Ariz. 49, 386 P.2d 649 (1963).

We next turn to the question of whether or not the defendants were entitled to have a default judgment set aside by reason of "mistake, inadvertence, surprise, or excusable neglect" as provided in Rule 60(c), R.C.P.

■ Our Supreme Court has held that the test of whether one is entitled to relief under this rule is "whether his conduct might be the act of a reasonably prudent person under the same circumstances." Bateman v. McDonald, 94 Ariz. 327, 385 P.2d 208 (1963). It is further the law of this state that: "Whether a sufficient showing of excusable neglect has been made is within the sound discretion of the trial court and will not be disturbed on appeal unless there has been an abuse thereof." Schering Corporation v. Cotlow, supra.

■ Each case and each defendant must be judged on the particular circumstances involved. As to the corporate defendant here there were no fortuitous events causing it to fail to answer, except the mistake and/or neglect of its own employees. There is no showing of how or why the process was misdelivered in the defendant's mail system. The appropriate officer of the corporate defendant had definite notice of the service at the time it was made and took no further action. We hold that the trial court could under these circumstances justifiably find that the neglect of this corporate defendant was not excusable.

■ As to the individual defendants, we are closer to the borderline of the trial court's discretion. However, the court believes that there was sufficient to justify the trial court in denying the motion to set aside as to these defendants also. They cannot, of course, be held responsible for the breakdown in the inter-company mail. However, having received the summons and complaint back with no communication whatsoever accompanying same, it seems extremely careless, in retrospect at least, to file them away and do nothing more. Mr. Carmona testified that the reason that he had treated them as lightly as he did was because he received them back in the morning when he was in a hurry to open up his store. Day-to-day operations were held in higher regard than court process. Mr. Carmona is the manager in charge of a substantial business and should have well appreciated that this summons and complaint had to be answered within 20 days. A consideration of the foregoing forecloses this court from ruling that the trial court could not have concluded that Carmona was inexcusably careless in taking no further action about the summons and complaint until after he heard about the default judgment through newspaper sources.

Another factor tending to justify the trial court's order is the failure of the defendants to show any reason for delaying until March 27 to file their motion to set aside default judgment. We are not here concerned with a void judgment, resulting from invalid service. Preston v. Denkins, 94 Ariz. 214, 382 P.2d 686. We are considering a motion as to a valid judgment brought in pursuance of Rule 60(c), R.C.P., which provides that the motion must be filed "within a reasonable time * * * not more than six months after the judgment." What is a "reasonable time" to take any particular action depends upon the exi-

gencies of the problem at hand. If a jugular vein needs suturing by a surgeon a reasonable time is much less than a reasonable time to reface the pyramids of Egypt to prevent erosion. Obviously, we are dealing here with a situation somewhere in between.

This is personal injury litigation. If a person is injured, wrongfully, there is a need for present relief. Litigation itself is controversy, and controversy should be settled as soon as possible for the well being of all concerned. The failure to answer was clearly a fault on the part of the defendants that ordinary prudence would recommend be cured as soon as possible after discovery. The persons concerned are in the commercial world and should be able to take legal action promptly.

Our Supreme Court has taken judicial notice of the fact that it is common practice for attorneys, when learning that a judgment has been taken by default against their client, to use haste in the preparation and filing of appropriate motions to set aside default in this language:

"Motion to set aside default judgments arise only in situations of rush and confusion. Counsel are not required to submit perfect pleadings immediately." Wilshire Mortgage Corp. v. Elmer Shelton Concrete Contractor, Inc., 97 Ariz. 65, 397 P.2d 50 (1964).

In California, from whence the subject rule is said to originate, it is held that it is incumbent upon an applicant seeking relief under this rule to explain delay in the filing of the motion. Mercantile Collection Bureau v. Pinheiro, 84 Cal.App.2d 606, 191 P.2d 511 (3rd Dis.1948); City of Pacific Grove v. Hamilton, 100 Cal.App.2d 508, 224 P.2d 19 (1st Dis.1950). These cases involve delays of 68 days and 5½ months respectively. In Romer, O'Connor & Co. v. Huffman, 341 P.2d 62, 171 Cal.App.2d 342 (1st Dis.1959), the court held that a delay of six weeks had been adequately explained.

Our Supreme Court has held that a trial court was justified in concluding that a delay of 15 days between discovery of default judgment and the filing of the motion to set the same aside was "reasonable." Bateman v. McDonald, supra.

In considering whether to grant or deny a motion of this type, this court believes it proper to take into consideration the promptness with which such a motion has been filed after there has been definite notice of the default. A recent decision so holding is Hotel Last Frontier Corp. v. Frontier Properties, Inc., 79 Nev. 150, 380 P.2d 293 (1963), in which the court, applying its Rule 60(b) which is the counterpart of our Rule 60(c), outlined the various factors to be considered. This court said (at p. 295 of 380 P.2d):

"Prompt application to remove the judgment is a persuasive factor."

Considering the factors mentioned above, this court holds that the trial court did not abuse its discretion in refusing to set aside the defaults and default judgments which are the subject of this appeal.

The foregoing makes it unnecessary to consider the plaintiffs' contention that the motions should have been denied because of lack of showing of a meritorious defense.

Affirmed.

ROBERT O. ROYLSTON and ALICE N. TRUMAN, Superior Court Judges, concur.

NOTE: The Honorable James D. HATHAWAY being unable to participate, and The Honorable HERBERT F. KRUCKER being disqualified, The Honorable ROBERT O. ROYLSTON, Judge of the Superior Court of Pima County, and The Honorable ALICE N. TRUMAN, Judge of the Superior Court of Pima County, were called to sit in their stead and participate in the determination of this decision.