494 P.2d 394

**AMERICAN MOTORS SALES CORPORATION, Petitioner,**

v.

**The SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF PIMA, and Joe Jacobson, Judge thereof; Betty W. STANGER, a single woman, Real Party in Interest, Respondents.**

No. 2 CA–CIV 1171.

Court of Appeals of Arizona, Division 2.

March 8, 1972.

Lesher & Scruggs, by Monte C. Clausen, Tucson, for petitioner.

Knez & Glatz, by Richard D. Crites, Tucson, for respondent real party in interest.

HATHAWAY, Judge.

■ The subject of this special action is an order of the respondent court denying a motion to set aside entry of default against the petitioner, defendant in a pending superior court action entitled Betty W. Stanger, a single woman, plaintiff, v. Galloway Motors and American Motors, defendants. (Pima County Superior Court Cause No. 129685). Since an order denying a motion to set aside a default is not appealable, Rueda v. Galvez, 94 Ariz. 131, 382 P.2d 239 (1963), intervention by way of special action is appropriate.

The record reflects the following. On October 14, 1971, the subject lawsuit was instituted naming Galloway Motors and American Motors as defendants. The thrust of the complaint was that the defendants had sold and delivered to the plaintiff a described vehicle, had made certain representations concerning it which were false and had refused to rescind the sale. Additionally, it was alleged that the defendants had breached certain warranties. The process server's affidavit recites service of copies of the summons and complaint on Galloway Motors by service upon Charles E. Galloway, Jr., its president and general manager, and upon American Motors by service upon Charles E. Galloway, Jr., president and general manager of Galloway Motors, "authorized agent of American Motors . . . pursuant to attorney's instructions." Service was effected October 15, 1971.

According to the affidavit of Mr. Galloway submitted by petitioner, he told the process server that he was not and had never been an agent for American Motors, and he thereafter mailed the copies of the summons and complaint, together with certain contract documents to the law firm which regularly represented him. He did not advise the law firm as to the circumstances of service of process upon him but merely forwarded the papers for defense of the suit on his behalf, as had been his custom in the past. Before filing a responsive pleading for Galloway, his attorney attempted to contact the plaintiff's attorney to discuss the suit, but without success, and he therefore filed an answer for Galloway Motors 19 days after the suit was filed. Twenty-one days after the suit was filed, contact was made with the plaintiff's attorney who advised Galloway's attorney that a default had been entered against American Motors whereupon Galloway's attorney telephoned American Motors in Detroit. (Friday, November 5, 1971.) On the following Monday, American Motors requested Galloway's attorney to make a special appearance on its behalf to set aside the default and challenge the court's jurisdiction. The following day, November 9th, counsel filed motions to set aside the default and to dismiss, accompanied by supporting memorandum and affidavits. On December 20th oral argument was had on these motions and denied by minute entry of the same date.

Petitioner contends, and we believe correctly so, that the court below acquired no jurisdiction over it. Respondent real party in interest, however, contends that jurisdiction was acquired over American Motors since service was effected pursuant to Ariz.R.Civ.P. 4(d)6, 16 A.R.S. which provides for service upon a foreign corporation:

"[B]y delivering a copy of the summons and of the complaint to a partner, an officer, *a managing or general agent*, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant." (Emphasis added.)

It was argued, and apparently successfully, that Galloway Motors was an agent of American Motors and therefore service of process upon the former gave the court jurisdiction of American Motors, a foreign corporation. Although the contract between American Motors and Galloway Motors recites that the dealer is not an agent of and not authorized to bind American

Motors, it was urged that other contractual provisions create an agency relationship. The following provisions are cited:

"This Franchise Agreement establishes the Dealer as an authorized retail dealer to sell and service Manufacturer's products as defined herein.

\*    \*    \*    \*    \*    \*

The Zone relies upon the authorized Dealer for representation in the market area. Satisfactory representation includes selling the Manufacturer's products in sufficient volume, servicing said products and maintaining the goodwill of the public. In essence, a large portion of the investment of the Manufacturer is distributed over the entire United States domestic territory in relation to the potential business volume available in each Dealer's market area. Thus, the economic fate of the Manufacturer in the authorized Dealer's market area is entrusted by the Zone to the Dealer. Failure of the individual Dealer to obtain satisfactory sales volume can work to the detriment of such Dealer, the Zone, the Manufacturer and ultimately other authorized Dealers.

Motor vehicles require frequent inspection and service. The Zone relies upon the Dealer to inspect and prepare each vehicle for delivery to the owner, also, to fulfill the obligations under the warranty and to make available subsequent required repair and maintenance service. Failure by Dealers to carry out these responsibilities invites misconception by the owner as to the quality of Manufacturer's products, creates potential hazard to the owner in operating the motor vehicle and jeopardizes the reputation of the Manufacturer, the Zone, the products and the entire Dealer organization.

The authorized Dealer is closely identified by the public with the Manufactur-er. The Dealer's conduct in the operation of his business strongly influences the goodwill and reputation of the Manufacturer and its products."

The respondent real party in interest also argued that the dealer franchise agreement did not create an independent contract relationship but rather an employment relationship since American Motors has a right to control purchase orders, dealer's prices for automobiles, parts and accessories, and the terms of purchase. The agreement also specified a minimum capital requirement for dealers, requirements as to salesmen for new vehicles, used cars, service and merchandising, the number of department managers, salesmen and mechanics, a standard accounting system, the number of motor vehicles and different series of motor vehicles, and provisions with respect to signs, advertising, service, stock of parts and accessories, warranty, and warranty adjustment. She also relied on the fact that the logo of American Motors appeared on the invoices of Galloway Motors and on its stationery, and that the classified section of the telephone directory shows Galloway Motors as the authorized dealer of American Motors.

In the case of Safeway Stores, Inc. v. Ramirez, 1 Ariz.App. 117, 400 P.2d 125 (1965), this court [1] reiterated the test enunciated by our Supreme Court in Schering Corp. v. Cotlow, 94 Ariz. 365, 385 P.2d 234 (1963) as to whether or not an employee is a "managing or general agent":

"[W]hether 'the agent is of such character and rank so that it is reasonably certain the defendant will receive actual notice of the service of process.'" 1 Ariz. App. at 119, 400 P.2d at 127.

■ The purpose of the rule dealing with service of summons upon a foreign corporation is to give an aggrieved party a means of bringing a foreign corporation

---

[1]. Although we affirmed the judgment of the trial court in its entirety as to its denial of the motion to set side the default and vacate the default judgment, the Supreme Court of Arizona, on petition for review, subsequently reversed as to the individual defendants. See Safeway Stores, Inc. v. Ramirez, 99 Ariz. 372, 409 P.2d 292 (1965)

into a proper jurisdictional tribunal and also to provide the corporation a means of security from default judgment. General Motors Corp. v. Superior Court, 15 Cal. App.3d 81, 93 Cal.Rptr. 148 (1971). *In personam* jurisdiction over a foreign corporation doing business in the state can be acquired only if there is service of process within the state upon a duly authorized officer or agent of the corporation. We do not believe that Galloway Motors was the "managing or general agent" of American Motors. Other cases which have considered dealership agreements such as the one we have here have held that the dealer is not the managing or general agent of the manufacturer. E. g. Westerdale v. Kaiser-Frazer Corp., 6 N.J. 571, 80 A.2d 91 (1951); Easterling v. Volkswagen of America, Inc., 308 F.Supp. 966 (S.D.Miss. 1969); see also Mooney Aircraft, Inc. v. Donnelly, 402 F.2d 400 (5th Cir. 1968); Bronderslev Motor Sales Co. v. Nebraska Buick Auto Co., 111 Neb. 40, 195 N.W. 519 (1923).

The dealer, Galloway Motors, had no authority to act for or on behalf of American Motors and was not entrusted with American Motors' business. In addition, it could not bring about, modify, affect, accept performance of, or terminate contractual obligations between American Motors and third persons.

Respondent real party in interest makes much of the fact that the name of American Motors is prominently displayed on advertising and stationery and that when a sale is made by Galloway Motors a manufacturer's warranty goes with the automobile. The Supreme Court of New Jersey in Westerdale, supra, rejected such matters as indicia of agency:

"The fact that the showroom of Clark & Eig Motors, Inc. carried signs prominently displaying the name 'Kaiser-Frazer' and 'Kaiser-Frazer Authorized Service' is not the holding out by the Kaiser-Frazer Corporation of Clark & Eig Motors, Inc. as an agent but rather is of the type that is commonplace among all dealers who sell products which have a trade name carrying substantial good will. Nor does the fact that when a sale is made by a dealer to the ultimate purchaser a manufacturer's warranty goes with the automobile spell out the dealer as the agent of the manufacturer. It is merely incidental to the sale and in no wise by itself gives apparent authority or agency to the dealer. Such manufacturer's warranties accompany a host of products being sold on the market today and it is inconceivable that manufacturers making such warranties thereby designate all persons and businesses which sell their product as their managing and general agents upon whom, among other things, service of process may be made." 80 A.2d at 94.

We believe that the general rule stated in 36 Am.Jur.2d Foreign Corporations § 573 (1968) is applicable:

"A contract between a foreign corporation and its local dealer, which merely obligates the former to sell to the latter, and the latter to purchase from the former for resale on his own account, clearly is only a sales agreement, and does not give rise to any agency relation, and the service of process upon such a dealer is accordingly not valid as a service upon the corporation."

Since Galloway Motors was not an authorized agent under Ariz.R.Civ.P. 4(d)6 to accept service of process for and on behalf of American Motors, service on Galloway Motors' president would not constitute service of process upon American Motors. The respondent court therefore should have granted the petitioner's motions.

For the reasons herein stated, the December 20, 1971 minute entry order is vacated with directions to enter an appropriate order not inconsistent herewith.

KRUCKER, C. J., and HOWARD, J., concur.