[Civ. No. 11177.   Third Dist.   June 17, 1966.]

CLARA M. CRADDUCK, Plaintiff and Respondent, v. FINANCIAL INDEMNITY COMPANY, Defendant and Appellant.

Robert M. Cole for Defendant and Appellant.

Lancaster & Yorton and Burt Lancaster for Plaintiff and Respondent.

PIERCE, P. J.—This is an appeal from a judgment following a jury verdict for plaintiff in the sum of $11,153.60 against defendant Financial Indemnity Company ("Financial"). The appeal is on a clerk's transcript augmented by the judgment roll in the original action. Financial had insured one Cervantes under a public liability policy. Plaintiff had obtained a default judgment against Cervantes for personal injuries suffered in an automobile accident. The judgment was obtained after publication of summons pursuant to an order therefor.

In the case at bench defendant's attack, which is against the judgment in the original action, is collateral. Against such an attack we hold the judgment must be affirmed. Our reasons will be developed below.

Publication of summons in the original action was based upon the affidavit of Burt Lancaster, one of plaintiff's attorneys. It alleged, *inter alia*, that a complaint had been filed and a summons issued January 31, 1961, and that the complaint and summons had been placed in the hands of William Lowe, a private investigator, for service upon Frank Cervantes, the defendant. It alleged that Lowe had made diligent efforts to serve Cervantes and enumerated these efforts which included a visit to his place of employment, where it was ascertained that Cervantes had left his employment. (Lowe was told there that Cervantes had "departed for the State of Oregon.") Cervantes' mother had been visited and from her it had been learned that she did not know his whereabouts. The investigator had talked with Cervantes' wife. From her he ascertained that Cervantes had absented himself from Sacramento County for the reason that he was being sought "by Sacramento County officials for the purpose of enforcing payment for support of said Defendant's minor child." Lowe had then visited the sheriff's office in Sacramento and had confirmed this information. Deputies of that office were searching for Cervantes and had a warrant for his arrest but had been unable to ascertain his whereabouts. From the California Department of Motor Vehicles the investigator learned that said defendant had "no residence address listed, only a post office address." Information had next been sought from the sheriff of Contra Costa County, where it was "learned that Defendant FRANK CERVANTES had been released from custody" and his whereabouts was also unknown to him. From these facts Lancaster, the affiant, drew the conclusions "that your affiant believes and thereon alleges that Defendant FRANK CERVANTES is secreting

himself to avoid the service of process and that he left the State of California.'' In our opinion the latter conclusion was unjustified by the facts ascertained. It is at least inferable, however, against collateral attack that the first assumption was correct. From the verified complaint it appeared that at the time of the accident Cervantes was driving an automobile with a California license number (BRV867).

The order for publication of summons recites that it is made on the basis of the verified complaint, the foregoing affidavit ''and from other evidence.'' It also recites that ''diligent search'' had been made and ''that said Defendant cannot, after due diligence, be found within the State of California.'' It orders service of summons by publication.

To complete the statement of pertinent facts, publication was made, Cervantes' default was taken June 6, 1962, and on July 25, 1962, a default judgment was given by the court after taking evidence. This was a personal judgment for $7,500 general damages, $2,105.50 special damages and costs. It recites that Cervantes had been ''regularly served with process.'' On June 7, 1962, plaintiff brought this action against Financial, alleging the unpaid judgment and Financial's liability as Cervantes' insurer. The case was tried to a jury which on November 2, 1964, in addition to its general verdict in plaintiff's favor brought in a special verdict as follows: ''Did Cervantes breach the cooperation clause and thereby substantially prejudice the defendant Financial Indemnity Company? Answer: (Yes or NO) NO.''

*Re The Contention the Original Judgment Violated*
*Code of Civil Procedure Section 417.*[1]

■ The first and principal contention on appeal is that the provisions of the captioned code section, which provides that a personal judgment can be obtained only by personal service of a copy of the summons and complaint upon the defendant, were not complied with. But Code of Civil Procedure section 417 applies only to ''a person who is outside of'' the State of California. Here the facts hereinabove related show it is not known where Cervantes, the defendant in the original action,

---

[1]Code of Civil Procedure section 417 provides: ''Where jurisdiction is acquired over a person who is outside of this State by publication of summons in accordance with Sections 412 and 413, the court shall have the power to render a personal judgment against such person only if he was personally served with a copy of the summons and complaint, and was a resident of this State (a) at the time of the commencement of the action, or (b) at the time that the cause of action arose, or (c) at the time of service.''

is—whether he is inside or outside the state. Obviously the section presupposes a defendant whose whereabouts outside the State of California are known—one who can be reached in another state for personal service of summons. Although plaintiff's attorney in his affidavit had drawn the conclusion that Cervantes was outside the State of California, that conclusion was based solely upon the fact that someone at the place of Cervantes former employment had told Lowe, the investigator, he had departed for Oregon. This constituted no more than a statement from Lowe's informant that Cervantes, when he quit his job, had told the informant (or someone else who told the informant) that he, Cervantes, was going to Oregon. Considering the circumstances of his departure, this statement by Cervantes, if he made it, was as likely as not to be one calculated to throw the sheriff's officers seeking him "off the scent" of his true destination. Section 417 therefore has no application here.

### *Re The Contention That Hearsay Allegations Are Insufficient to Support a Default Judgment.*

Publication of summons in the original action was under Code of Civil Procedure sections 412, 413. The provisions of section 412, insofar as they are applicable to this proceeding, provide that the judge may make an order that service of summons against an individual defendant be made by publication when any of the following conditions exist: (1) such defendant resides out of the state, or (2) has departed from the state, or (3) cannot with due diligence be found within the state, or (4) conceals himself to avoid service of summons. A provision of section 413 applicable to our inquiry in the instant case is: "In case of publication, where the residence of a nonresident or absent defendant is known, the court, judge, or justice, must direct a copy of the summons and complaint to be forthwith deposited in the post office, directed to the person to be served, at his place of residence."

The facts alleged in Mr. Lancaster's affidavit, as outlined above, are hearsay. Financial urges this as establishing that the order for publication of summons, default and default judgment following it are void. Cited to support that argument are *Miller* v. *Superior Court*, 195 Cal.App.2d 779, 784 [16 Cal.Rptr. 36], and *Kahn* v. *Matthai*, 115 Cal. 689 [47 P. 698]. Both of those actions were on direct attack from the default judgment.[2] But the action in which this appeal is

---

[2]Moreover, a careful reading of *Miller* v. *Superior Court, supra,* at pages 783-784, will show that the court did not strike down that portion

taken is a collateral attack. ". . . In an action upon a judgment the judgment sued on may not be attacked except in accordance with the rules and principles governing collateral attack." (*Ligare* v. *California Southern R. R. Co.*, 76 Cal. 610, 613 [18 P. 777]; *Kirkpatrick* v. *Harvey*, 51 Cal.App.2d 170, 172 [124 P.2d 367]; and see generally 3 Witkin, Cal. Procedure (1945) pp. 2044, 2045, and cases cited.) One of the rules governing collateral attack is that hearsay in the affidavit for publication of summons may be considered and supports the judgment thereafter made.

In *Thompson* v. *Thompson*, 226 U.S. 551, 556 [33 S.Ct. 129, 57 L.Ed. 347], a Virginia decree was attacked upon the ground that the affidavit used as the basis for an order of publication was made on information and belief and not on personal knowledge. The court said at page 566: "[I]t seems well settled that where the affidavit used as the basis for an order of publication is defective, not in omitting to state a material fact, but in the mode of stating it or in the degree of proof, the resulting judgment, even though erroneous and therefore voidable by direct attack, cannot be said to be *coram non judice* and therefore void on its face." In *Pennoyer* v. *Neff*, 95 U.S. 714, 721 [24 L.Ed. 565], it was said that defects in an affidavit can only be taken advantage of in a direct proceeding.

Several California cases hold that in a collateral proceeding the hearsay nature of facts stated in an affidavit considered by a judge in determining that the affiant used due diligence to effect service does not render the judgment void. (*Rue* v. *Quinn*, 137 Cal. 651, 656-657 [66 P. 216, 70 P. 732]; *Ligare* v. *California Southern R. R. Co.*, *supra*, 76 Cal. 610; see also *Davis-Heller-Pearce Co.* v. *Ramont*, 66 Cal.App. 778 [226 P.

of the affidavit which was merely hearsay: there as here the affidavit in support of the publication offer was by the attorney and the attorney (also as in the attacked proceedings here) had hired an investigator who had conducted inquiries. Facts alleged in that portion of the attorney's affidavit showing (no doubt on the basis of the investigator's sleuthing) that due diligence had been exercised to find and serve the defendant and those showing that he was hiding to avoid service of process were held sufficient. It was only a portion of the affidavit which contained excerpts from the report of the investigator where that individual had informed the attorney-affiant, "It is with regret I must tell you that he has skipped the state . . .," which was condemned. Regarding that portion the court says on page 784: ". . . The quoted portion of the investigator's report included in said affidavit was consequently not only hearsay as to said deponent but was itself based upon unsworn and hearsay information. It was, therefore, of no probative value and insufficient to support a finding that the defendant had departed the state."

972]; *Butler* v. *McKey*, 138 F.2d 373.) In *Rue* v. *Quinn*, *supra*, the court made an observation which should be stressed. It stated (on p. 657) : ''. . . From the nature of the question to be determined, the evidence thereon must to a very great extent be hearsay. . . .'' Diligence is exercised by a plaintiff by inquiries made from many sources. It is the sum of the information obtained at each of these sources which will make it possible for the judge to determine whether an order for publication of summons should issue. To require a separate affidavit from each source would be both cumbersome and unnecessary. We hold that the fact that the allegations of the affidavit were hearsay did not in these collateral proceedings vitiate the default judgment ipso facto.

### *Re The Contention That the Affidavit Was Otherwise Insufficient.*

█    The affidavit filed in this case is not a model of draftsmanship. It does, however, state facts showing that Cervantes could not after due diligence of search be found within the State of California. Every fact alleged justifies by clear inference the conclusion that Cervantes was a resident of California. He had a car registered in California and was driving a car with a California license plate at the time of the accident. His wife had sought the aid of the Sacramento County Sheriff to enforce an order of child support and that officer had a warrant out for his arrest. It is clearly inferable that his employment was in California and that he lived here. As against collateral attack it is enough that required facts appear by inference. (*Ligare* v. *California Southern R. R. Co., supra*, 76 Cal. 610, 612-613; *Chapman* v. *Moore*, 151 Cal. 509, 513 [91 P. 324].) The evidence recited above regarding the unsuccessful efforts of the wife and Sacramento County law enforcement officers to cause the arrest of Cervantes also justifies the conclusion that he was concealing himself (in the language of § 412) ''to avoid the service of summons''—albeit the process he sought to evade was in another action. (See *Miller* v. *Superior Court, supra*, 195 Cal.App.2d 779, 783-784, a case which we will discuss at length below.)

█    It has been noted above that where the residence of ''a *non-resident* or *absent* defendant is known'' a copy of the complaint and summons must be mailed to him in addition to the service to be made by publication. (Italics added.) (Code Civ. Proc., § 413.) But here, as the affidavit shows, Cervantes was neither a ''non-resident'' nor ''absent'' defendant in the sense those terms were intended by the Legislature in said

section. In *Ligare* v. *California Southern R. R. Co.*, *supra*, the court states (at pp. 614-615) : ". . . It may very well be that the legislature considered it useless to require the deposit where the defendant was within the state, but was concealing himself to avoid service of summons, or could not, after due diligence, be found."

Moreover, the affidavit shows that Cervantes was a person *whose residence was not known.* Inquiry had been made at his former address (which turns out to be the hop ranch of a former employer), and it had been determined there that he had departed. This was more than sufficient. Where it is not shown that the residence of the defendant is known the judge is not required to order that a copy of summons and complaint be mailed. (*Klokke Inv. Co.* v. *Superior Court*, 39 Cal.App. 717, 718 [179 P. 728].) The burden of proof was upon Financial to prove that on the face of the judgment roll in the original action the default judgment was void. A judgment is presumed to have been within the court's jurisdiction. (*Parsons* v. *Weis*, 144 Cal. 410, 414-415 [77 P. 1007], and see cases cited *infra.*) Defendant's burden was not sustained. For the purposes of this collateral proceeding we conclude that the affidavit on its face adequately complied with the statutory law for service by publication.

### *Re The Question of the Constitutionality of the Original Judgment as a PERSONAL Judgment.*

Compliance with Code of Civil Procedure sections 412 and 413 does not always result in a valid *personal* judgment. The California Supreme Court in *Allen* v. *Superior Court*, 41 Cal.2d 306 [259 P.2d 905], and again in *Owens* v. *Superior Court*, 52 Cal.2d 822 [345 P.2d 921, 78 A.L.R.2d 388], has held (1) that section 412 is literally broad enough to authorize a personal judgment by publication when any of the foregoing conditions are met: (2) however, *Pennoyer* v. *Neff*, *supra*, 95 U.S. 714, and later cases, including *Milliken* v. *Meyer*, 311 U.S. 457 [61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357], set forth constitutional limitations which also must be met, namely, observance of the requirements of due process; and (3) due process "requires fair notice."[3]

Can due process be satisfied (in an action against a non-

---

[3]In both *Allen* and *Owens* it was held that due process had been complied with because there had been actual service of summons outside the state on a defendant who when the action was brought was either domiciled in California or had maintained sufficient contacts within the state to satisfy due process.

corporate defendant) in no other way than by reaching defendant somewhere with personal service of summons? Or, stated in another way, in such an action will no other "substituted" service give "fair notice? So to hold would deny a plaintiff any possibility of obtaining a personal judgment against a defendant who cannot be found whether it is because the defendant hides himself or changes his identity successfully, or for some other reason disappears, to the end that no amount of diligent search can reach him.

A comment in 44 California Law Review 737, *Personal Jurisdiction Over Absent Natural Persons,* at page 742, poses the dilemma but does not answer it, although it does say that if a personal judgment *is* impossible under the circumstances stated "the plaintiff would be unduly burdened and the defendant permitted the advantage of a windfall through his own undesirable conduct."

This is not altogether a case of first impression in California. The facts in *Miller* v. *Superior Court, supra,* 195 Cal. App.2d 779, were quite similar. There in a personal injury action a defendant sought could not be reached for service of summons, the reason being he had successfully hidden himself to avoid arrest under a criminal charge for drunk driving. An order for service by publication was obtained and that was the only service of process. Although, as here, the foundational affidavit for the order of publication stated, on information and belief, that defendant was out of the state, the *factual* basis for substituted service was that he was concealing himself. In holding that a valid personal judgment had been obtained the court (per Sparks, Justice pro tem.) stated (on p. 786): "A person who deliberately conceals himself to evade service of process is scarcely in a position to complain overmuch of unfairness in substitutive methods of notification enacted by the Legislature to cope with such situations. When it satisfactorily appears that a defendant by his own design successfully has secreted himself from the process server and thus thwarted personal service, it would indeed be anomalous to heed an assertion that he had been denied notice and an opportunity to be heard. (*Ware* v. *Robinson,* . . . , 9 Cal. 107.)"

The opinion concludes on page 788: "[W]e do not feel constrained, however, to hold that personal service of process upon the petitioner is a mandatory requirement for the entry of a personal judgment. There was no finding of the court supported by substantial evidence that petitioner had either

departed from the state or was absent therefrom. His attorneys frankly concede that they do not know his whereabouts. We therefore find no imbalance of fair play in allowing the plaintiffs to proceed upon constructive service of process against the petitioner who is concealing himself to evade service. The contention that he may have fled the jurisdiction and therefore must be personally notified of the action is based upon conjecture and not evidence. Otherwise, so long as petitioner was successful in evading the process server, plaintiffs' right to proceed with their lawsuit would be stalemated and their claims held in abeyance.''

It is true that in the *Miller* case the order for publication of summons contained a finding that the defendant was concealing himself to avoid service of summons. That finding is missing from the order made in the original action here. A finding in the order is, however, unnecessary. It was stated in *William Wilson Co.* v. *Trainor*, 27 Cal.App. 43, at page 44 [148 P. 954] : ''Jurisdiction to make the order rested upon the averments of the affidavits, and not upon the recitals of facts found in the order.'' Moreover, in the instant case the proceedings did not end with the order for publication of summons. Thereafter publication was made, a default was taken and after witnesses were sworn—whose testimony is not before us on this clerk's transcript appeal—a *personal* judgment was entered, finding that Cervantes had been regularly served with process. Concealment to avoid service of *any and all process* was shown by affidavit. Assuming, without holding, that concealment to evade service of process, as well as, and in addition to, inability to find after due diligence of search, is necessary *against a collateral attack* to justify the personal judgment, the rule is that ''Implicit in every order [or judgment] . . . is a finding of those facts supported by the evidence which are necessary to sustain it.'' (*People* v. *Tannehill*, 193 Cal.App.2d 701, 706 [14 Cal.Rptr. 615]; see also *Griffith Co.* v. *San Diego College for Women*, 45 Cal.2d 501, 507 [289 P.2d 476, 47 A.L.R.2d 1349].) It has also been held in *Minardi* v. *Collopy*, 49 Cal.2d 348, at page 353 [316 P.2d 952] : ''. . . On such [collateral] attack every presumption is in favor of the validity of the judgment or order and any condition of facts consistent with its validity and not affirmatively contradicted by the judgment roll will be presumed to have existed. [Citation.]''

We have assumed *arguendo* but we do not hold that proof by affidavit that Cervantes' concealment to avoid *some*

process was necessary to justify a personal judgment. It is true that a defendant who is secreting himself is in a morally inferior position to one who cannot be found after due diligence. It does not follow that only the former is vulnerable to a personal judgment after published summons. Due process requires no more than "fair notice." Whatever his reason, Cervantes has disappeared. Before the order for publication was obtained the disappearance had lasted a year and a half. It is obvious that no notice other than that which was given could have been given. Every possible means of reaching him was exhausted. Any further requirement of notice would seem unreasonable. As Chief Justice Traynor stated (in another context) in *People* v. *Modesto*, 62 Cal.2d 436, at page 452 [42 Cal.Rptr. 417, 398 P.2d 753] : ". . . The Constitution is not at war with common sense."

█ ,A factor which cannot be disregarded at this point is the role of the insurance company, Financial, in the proceedings. The record shows the following : Financial's representative was informed by plaintiff on April 4, 1960, of the accident (which had occurred on February 24, 1960, one-quarter mile east of Perkins). It was also informed of the claim against Cervantes on that date. Financial, however, had known of the accident at least as early as March 3, 1960, when Cervantes had given its adjuster a statement. Financial had plaintiff examined by its doctor. Negotiations were had for a settlement and it appears that an offer of compromise made by Financial was rejected. On March 20, 1962, (over two years after the accident) Financial advised that it would not accept service of summons until Cervantes had been served and would not appear in the action until then. (Financial had been provided with a copy of the complaint and summons.) Correspondence from Financial to plaintiff's attorneys, dated May 21, 1962, states : "Mr. Cervantes was, on February 21, 1960, and so far as we know still is, a resident of California." However, subsequent correspondence stated the company did not know his present whereabouts, and the record also shows that "On February 7, 1961, a letter was addressed by Adjuster to insured advising him of pending service of summons and complaint, assured address being P.O. Box 113, Perkins, California." This letter was returned with the annotation "moved, no address." The address given is, as the record shows elsewhere, that of the Weissman Ranch and was at the time where he lived and was then employed.

The facts recited subsequent to the default judgment, of

course, have no relevancy to the sufficiency of the affidavit upon which the order for publication of summons was based, and it is upon the basis of that affidavit that the order must stand or fall. (*Wyoming Pacific Oil Co.* v. *Preston*, 50 Cal.2d 736 [329 P.2d 489].) They do, however, have a relevancy on this collateral attack made not by Cervantes but by Financial in which that insurance company claims that *it* has been denied due process. We have reached the point in our discussion where we deal with "due process," "fair notice" and "collateral attack," all in combination, all in juxtaposition. We explain our abstrusity: As we view it, the constitutional demand for "fair notice" is really a demand which belongs to Cervantes personally and not to Financial. Financial is confronted with a question of its *standing* to raise a constitutional claim belonging to another. We find that standing limited and circumscribed by the following facts: The record shows that Financial had complete knowledge of all that has occurred from the beginning. It had notice of the accident and of everything that followed. We have stressed the fact that this is a collateral attack upon the judgment. It did not have to be. Under Code of Civil Procedure section 387[4] Financial could have intervened in the original action to attack the method by which jurisdiction was acquired. Also, under the terms of its policy (a part of the record) since it had the right to appear in the action in Cervantes' name, it could have appeared specially to challenge jurisdiction directly. (Code Civ. Proc., § 416.1.) On the record before us it appears that Financial had knowledge of the accident and of all the facts connected therewith. Under the terms of its policy, a copy of which is in evidence, it had a right to appear in the action and defend. It exercised that right in all respects excepting only that it refused to appear in the action. It took a statement from Cervantes; it caused the plaintiff to submit to physical examination; it negotiated with plaintiff's attorneys and made an offer of settlement. As a reviewing court we must accept as fact that Cervantes cooperated with Financial in every way and that the insurer was not prejudiced by Cervantes' departure. (We say this because in the case at bench Financial raised these issues, there was a special jury verdict finding

---

[4]That section provides in material part: "At any time before trial, any person, who has an interest in the matter in litigation, or in the success of either of the parties . . . may intervene . . . . An intervention takes place when a third person is permitted to become a party to an action . . . between other persons . . . by uniting with the defendant in resisting the claims of the plaintiff . . . ."

against the insurer, and we must assume that substantial evidence supported it.) Eschewing opportunities to appear either generally or specially, Financial elected to stand by on the assumption and theory that no possible valid personal judgment can be had against a tortfeasor who successfully disappears, making personal service of summons impossible. We hold otherwise.

The judgment is affirmed.

Friedman, J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 24, 1966.

