526 P.2d 1248

Barbara Ann BRENNAN, a married woman,
and John G. Brennan, her husband,
Appellants,

v.

WESTERN SAVINGS AND LOAN ASSOCI-
ATION, an Arizona corpora-
tion, Appellee.

No. 1 CA–CIV 2202.

Court of Appeals of Arizona,
Division 1.

Oct. 10, 1974.

As Amended Oct. 23, 1974.

As Modified on Denial of Rehearing
Nov. 20, 1974.

Review Denied Jan. 8, 1975.

**294**

Herbert Mallamo, Phoenix, for appellants.

Streich, Lang, Weeks, Cardon & French by Louis A. Stahl and Dan M. Durrant, Phoenix, for appellee.

## OPINION

HOWARD, Judge.

The appeal in this case challenges the jurisdiction of the Superior Court of Maricopa County to enter a judgment of foreclosure binding on appellants in an earlier case. Based upon the facts explained below, we affirm the summary judgment of the court below dismissing appellants' complaint to set aside the foreclosure judgment.

On June 14, 1966, Richard B. Dutoit and Helen Dutoit, his wife, quitclaimed property known as Lot 36, Paradise Oasis to appellant John G. Brennan, at that time a single man. Approximately two years earlier, the Dutoits executed and delivered a promissory note and real property mortgage to appellee. Six months after delivery of the deed, appellants were married and together took up residence at 3023 East Topaz Circle, the Paradise Oasis lot.

Payment on the mortgage indebtedness ceased in May, 1970, and on August 4, 1970, in Cause No. C–237831, appellee brought suit for foreclosure. It is the judgment entered in this suit which appellants seek to set aside. The parties named as defendants in this action were Richard B. and Helen Dutoit, appellant John Brennan, the Industrial Commission, the United Bank, John Doe I–V, Jane Doe I–V, Black Corporation I–V, and the unknown heirs of any individual defendant if deceased. Appellant John Brennan was personally served with a copy of the complaint at his office; at that time he was an Arizona attorney. Personal service was not obtained upon the Dutoits. The affidavit of return of service of process stated that "after diligent search and inquiry we are unable to locate and serve Richard B. Dutoit and Helen Dutoit in the City of Phoenix, State of Arizona, at this time. During said search and inquiry, the following sources were investigated: Public Utilities, post office department, Phx. directory assistance & a credit bureau". The affidavit also relates that "below attempt to serve

process included a physical search of the address known as 3023 East Topaz Circle, Phoenix, Arizona." Appellee's former attorney filed an affidavit in support of service by publication alleging merely that their residence was unknown to appellee. As a result of this inability to serve process, the summons was published in four consecutive editions of the Weekly Gazette.

Another affidavit of return of service of process was filed in this action showing service upon:

> "JOHN G. BRENNAN AND BARBARA BRENNAN, as Parties In Possession, by leaving two true copies with JOHN G. BRENNAN, Co-Defendant, being a person of suitable age and discretion and residing therein at 3023 East Topaz Circle, Phoenix, Arizona, their usual place of abode, on the 5th. day of August, 1970, at the hour of 6:10 P.M."

During the hearing on appellants' motion for a preliminary injunction in the second action, the circumstances of this service were detailed by the process server as follows:

> "I went to the front door and rang the doorbell, and the door was answered by Mrs. Brennan or a person who identified herself to me as Mrs. Brennan. I attempted at that time eo [sic] explain to her what my purpose was and that I was serving a notice of foreclosure and summons and Complaint upon her as a party in possession of the property and her husband. And I asked her for her first name to identify herself, and she told me that her name was Barbara. She asked me if I would explain this to her husband, which I was more than happy to do. And she took me through the house to the back yard where Mr. Brennan was working in the yard, and at that point I explained to Mr. Brennan what my purpose was, and I was serving him and Mrs. Brennan as John Doe I and Jane Doe I in the Complaint, notice of foreclosure and summons and Complaint.

> *   *   *   *   *   *

> Q How long a conversation did you have with Mrs. Brennan at the front door? Can you estimate how long you tried to explain to her what your purpose was?

> A Very short. I just was to the point as to my purpose there. I would say that probably took a minute to explain the fact that she was being served, and that the parties in possession were being served.

> *   *   *   *   *   *

> Q Did you leave any copies of the summons and Complaint?

> A Yes, sir, I left two.

> Q Who did you leave them with?

> A I left them in the possession of Mr. Brennan.

> Q And was Mrs. Brennan there throughout the entire conversation that you have just related?

> A No, sir. She returned to the house after I had explained my initial purpose, and then when Mr. Brennan was looking over the papers."

Appellant John Brennan testified that he had no independent recollection of "ever having been served in the back yard of my home." He also stated that if the events had transpired as the process server said they had he believed that he would have remembered. Likewise, appellant Barbara Brennan testified that she had no independent recollection of the manner of service of process and that if the process server's description of the events had been accurate she believed she would have remembered.

On September 17, 1970, appellants' default was entered and on January 11, 1971, judgment was entered, foreclosing all their right, title and interest in the mortgaged property. On January 28, 1971, appellant John G. Brennan recorded a declaration of homestead. Special execution was issued and the property was sold to appellee at the Sheriff's sale. Six months thereafter, appellee notified appellants of the entry of judgment, sale, and expiration of the right

of redemption and demanded possession of the property.

On October 6, 1971, appellants instituted this action to set aside the judgment of foreclosure. Appellee filed a motion for summary judgment, and it was agreed that a ruling on appellants' motion for leave to amend would be delayed until after consideration of the motion for summary judgment. Judgment was entered in appellee's favor, and this appeal followed.

Appellants raise two issues on appeal. First, they contend that because the service by publication upon the Dutoits was invalid the court had no jurisdiction over the mortgage and therefore appellants are not bound. Second, they argue that service upon appellant Barbara Brennan was a defective attempt to serve a fictitious person.

■ Arizona Rule of Civil Procedure 4(e)(3), 16 A.R.S., establishes two conditions precedent to utilization of service by publication. First, the law must not require personal service; appellants do not claim that this condition has not been met. Second, the party must be subject to service under Rule 4(e)(1); in this case, the Dutoits were persons whose residence was unknown to appellee.

> "Due diligence in trying to serve the summons personally is required before jurisdiction through publication will be granted. Preston v. Denkins, 94 Ariz. 214, 382 P.2d 686 (1963). The existence of the jurisdictional fact that residence is unknown and not the mere allegation of such fact is required. Ibid. It is not enough to state that residence is unknown without setting forth the efforts made to locate the party." Llamas v. Superior Court, 13 Ariz.App. 100, 101, 474 P.2d 459, 460 (1970).

Appellants claim that the affidavit filed by appellee's attorney was insufficient and that there was no showing of due dili-

gence. They are correct that the attorney's affidavit was inadequate.

■ The affidavit of return of process filed in the record by the process server, however, satisfied Rule 4(e)(3), Walter v. Northern Arizona Title Co., 6 Ariz.App. 506, 433 P.2d 998 (1967). We therefore focus our attention on the affidavit contained in the process server's return of process.

The alleged lack of due diligence has two sources: First, the failure to ask appellants whether they knew where the Dutoits resided; second, the failure to investigate outside the metropolitan Phoenix area.

■ Citing Lown v. Miranda, 34 Ariz. 32, 267 P. 418 (1928), appellants contend that due diligence required that "some inquiry be made of the occupants of the house". In *Lown,* the court held that due diligence was not shown because no inquiry was made of the tenants occupying the property in litigation. We do not feel that there was any obligation to interrogate appellants regarding the Dutoits' address in view of the extensive investigation which had been undertaken. In the landlord-tenant relationship there are continuing ties which make it likely that the tenant will know the landlord's whereabouts; that likelihood is not present in the grantor-grantee relationship.

■■ Nor can we conclude that where service by publication is based on the fact that the party's residence is unknown, due diligence requires a canvass of the entire state, as appellants suggest.[1] The fact that a credit bureau, the public utilities, the post office, and Phoenix directory assistance were checked indicates to us that the investigation was not confined to the city

---

1. In Collins v. Streitz, 47 Ariz. 146, 54 P. 2d 264 (1936), cited by appellants, the court was concerned with Sec. 3762, Revised Code of 1928, which required an affidavit that defendant was not a resident of the state. The court held that an affidavit that the defendant was not a resident of Maricopa County was insufficient since there were 13 other counties in the state. A.R.C.P. 4(e)(1) authorizes publication when the defendant's residence is unknown.

limits of Phoenix. Rather, it appears to have included the Phoenix metropolitan area. We feel that in this case due diligence was proven as a matter of law. We do not mean to imply that in all cases an investigation of similar sources will prove due diligence. Factors such as the geographical area surveyed and the population covered must also be considered. When we examine those and other factors, we conclude that due diligence was exercised. Compare, Wells v. Valley National Bank, 109 Ariz. 345, 509 P.2d 615 (1973).

 Appellants also contend that there was no personal jurisdiction over Barbara Brennan because service of process was defective.

"For the court to have personal jurisdiction over a defendant designated under a fictitious name, it is essential that any party being served must clearly be given notice that he is being served as a defendant in the case, and is being served in place of a defendant designated under a fictitious name, and if the facts do not so show then the service is fatally defective." Safeway Stores, Inc. v. Ramirez, 99 Ariz. 372, 379, 409 P.2d 292, 297 (1965).

The testimony of the process server shows that he made appellants personally aware of the nature of the complaint on two occasions, once when he confronted Barbara Brennan at the door and again when he talked with John Brennan. Appellants' testimony that neither remembered the described occasions does not raise a material factual issues.[2] Appellants' contention that Rule 10(f) of the Rules of Civil Procedure requires an amendment to the pleadings to show the true name of the defendant actually served is belied by the wording of the rule. It merely provides that "the pleading or proceeding *may* be amended . . . ." [Emphasis added] There is no requirement that an amendment be made. Safeway Stores, Inc. v. Ramirez, 1

Ariz.App. 117, 400 P.2d 125 (1965), reversed *on other grounds,* 99 Ariz. 372, 409 P.2d 292 (1965).

Since none of our conclusions are altered by the allegations in appellants' amended complaint, we affirm the summary judgment dismissing appellants' complaint to set aside the foreclosure judgment.

Affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).

---

2. In Preston v. Denkins, 94 Ariz. 214, 382 P.2d 686 (1963) the court discussed the nature of an independent action to set aside

a judgment. The court held that in such cases either party was entitled to a jury trial to resolve disputed facts.