706 P.2d 1207

**Winnifred WALKER, Larry Walker, and Winnifred Walker and Oliver Walker, natural parents and Guardians ad Litem for Rebecca Walker, a minor, Plaintiffs/Appellees,**

v.

**Melanie Toyofuku DALLAS, Defendant/Appellant.**

**No. 17957–PR.**

Supreme Court of Arizona,
En Banc.

Sept. 19, 1985.
Rehearing Denied Oct. 29, 1985.

Parris & Vingelli by Michael J. Vingelli, Tucson, for plaintiffs/appellees.

Rubin & Cronin by Robert S. Cronin, Jr., Phoenix, for defendant/appellant.

HAYS, Justice.

Petitioners, Larry and Winifred Walker, and their daughter, Rebecca, were injured when their car was struck by a car driven by respondent, Melanie Toyofuku Dallas (hereinafter "Dallas"). Petitioners sued respondents, Dallas and her husband, John Doe Dallas, for personal injuries caused by this auto accident. Respondent failed to appear and petitioner obtained a default judgment for $150,000. Respondent's insurer, Liberty Mutual Insurance Co. (hereinafter "Liberty"), appeared and moved to set aside the default judgment. *See* 16 A.R.S., Rules of Civil Procedure, Rule 60.[1] Liberty argued that the judgment was void. *See* Civil Rule 60(c)(4). Among other reasons, Liberty argued that service of process was deficient. The trial court refused to quash service of process and refused to set aside the default judgment for any other reason. The Court of Appeals reversed in a memorandum decision. *Walker v. Dallas*, 2 CA–CIV, filed December 21, 1984 (Memorandum Decision No. 5111). The court concluded that service of process was deficient and dismissed the default judgment. *Id.* We have jurisdiction. Ariz. Const. art. 6, § 5(3); 17A A.R.S.R.Civ. App.P., rule 23; A.R.S. § 12–120.24. We vacate the opinion of the Court of Appeals.

## FACTS

On February 14, 1979, Dallas allegedly ran a stop sign at an intersection in Tucson and crashed her rental car into petitioner's car. All the persons involved in the accident, including the three persons in petitioner's car, were taken to the hospital for treatment. Dallas' car, which had been rented from Selby Motors Rent A Car,[2] was described as a "possible total loss" after the accident. The rental car was insured by Liberty, who conceded below that they were liable for any valid judgment against the insured, Dallas.

Two days after the accident, Liberty received a report about the accident from the rental car agency. This report referred to the persons injured in the accident and to the accident report prepared by the Pima County Sheriff's Department. Settlement discussions between petitioner's attorney and Liberty's claims adjuster were conducted on February 12th and 16th of 1980. As part of these discussions, Liberty received medical reports on the Walkers' injuries and a record of lost wages. Settlement negotiations were last conducted on March 9, 1980.[3] On February 17, 1981, petitioner sued Dallas for the personal injuries caused by Dallas' alleged negligent driving. A process server tried to serve the summons at the local Tucson address Dallas gave the police at the accident scene. On April 7, 1980, the summons was returned with the notation that Dallas had not lived at this address for at least eight months. Further investigation was conducted to determine Dallas' new address. This inquiry

---

1. 16 A.R.S., Rules of Civil Procedure, will be hereinafter referred to as "rule" followed by the number.

2. Selby Motors has never been a named defendant in this lawsuit.

3. Petitioner also claims that he threatened to sue Liberty during this conversation. We need not decide whether or not this is true.

included checking for her address on voter registration lists, the tax rolls, the phone directory, the city directory, investigator records, and at the post office. The only address for Dallas uncovered by this investigation was the New York residence listed on her New York driver's license. Dallas presented this driver's license to the police at the accident scene.

On January 28, 1982, counsel served the Superintendent of Motor Vehicles as the statutory agent for a nonresident driver. *See* A.R.S. § 28–502. Petitioner also sent copies of the summons and complaint to Dallas' local and New York addresses. *See* A.R.S. § 28–503. It is not, however, argued on appeal that service complied with this statute. Both letters were returned undelivered. On February 23, 1982, petitioners again mailed a copy of the complaint and summons to the New York address and it was again returned undelivered.

Starting on January 26, 1982, petitioner published the summons once a week in a newspaper of general circulation in Pima County for four weeks. By February 16, 1982, petitioner had completed service by publication. *See* Civil Rule 4(e)(3).

On July 21, 1982, a New York process server personally delivered a copy of the summons and complaint to the New York residence listed on Dallas' driver's license. The process server listed this address in its affidavit as Dallas' "dwelling house or usual place of abode." Civil Rule 4(d)(1). The process was delivered to Helen Putnam who resided at this address. Putnam was a close friend of Dallas who had known her since 1961 or 1962. From the mid–1960's to late 1978, Putnam and Melanie Dallas (at that time Melanie Toyofuku) lived together off-and-on for a total of three to four years. Putnam revealed additional facts about respondent. In late 1978, Melanie Dallas married and moved to Arizona. The accident occurred on February 14, 1979. Shortly after the accident, Dallas and her husband moved to England. Putnam received several letters since that time from Dallas, each from a different address in England. After she received the process, Putnam tried to deliver the papers to Dallas. She initially could not find Dallas' address. She wrote Dallas' sister in Washington at her last known address. The letter was returned undelivered because Dallas' sister had moved without leaving a forwarding address. Putnam did not know the address of any of Dallas' other relatives. Eventually, Putnam lost the suit papers. Since Dallas left for Arizona in 1978, Putnam has not spoken to her. She has also never informed Dallas of the lawsuit by letter. In 1983, Dallas' renewal for her New York driver's license was received by Putnam at her address. The license was renewed, again listing this residence at Dallas' address.

Below, appellant argued that service of process at Dallas' New York address was service at her "dwelling house or usual place of abode." Civil Rule 4(d)(1). Petitioner contended that because Dallas had lived in a series of temporary residences in Arizona and England since the accident, her New York address was as fixed an abode as her transitory life style permitted. Petitioners contended that their various attempts to discover Dallas' address and serve process were reasonably diligent. They argued that there was a reasonable probability that Dallas would receive process by leaving it at her New York address and that no better address for service of process has since been uncovered. Alternatively, petitioners contended that Dallas was estopped to deny service of process. They charged that she left Arizona suspiciously soon after the accident without leaving a forwarding address. They contended that she left Arizona knowing that she had no intention to return to either of the addresses given to the police at the accident scene. The trial court refused to quash service of process. The Court of Appeals reversed. The court narrowed the issue to whether Dallas' New York address was her abode for purposes of Civil Rule 4(d)(1). *See Walker v. Dallas, supra.* The court found insufficient evidence that this was the residence of Dallas.

We need not reach the question as to whether there was sufficient abode service in this case. We conclude that there was adequate service of process by other means. Unlike the Court of Appeals, we find the controlling statutory provision in this case is Civil Rule 4(e)(1), which states in relevant part:

When a defendant is a non-resident of the state, or is absent from the state, or is a *transient person,* or is *one whose residence is unknown to the party* ... or is concealing himself to avoid service of summons [then] ... service may be made in accordance with Sections 4(e)(2) [personal service outside the state] or 4(e)(3) [service by publication]. (Emphasis added).

We assume without deciding that the New York address was not Dallas' abode. We believe, however, that the defendant could certainly be served as "one whose residence is unknown" and perhaps also as "a transient person" within the meaning of Rule 4(e)(1). It is undisputed that petitioner served Dallas by publication. Due diligence in attempting to serve the defendant personally is required before service by publication is warranted. *See Brennan v. Western Savings & Loan Ass'n,* 22 Ariz.App. 293, 296, 526 P.2d 1248, 1251 (1974). The trial court apparently concluded that petitioners exercised diligence in serving Dallas by attempting to serve her last known residences and trying to discover her present residence. These attempts to locate Dallas were frustrated by her migratory life-style. Rule 4(e)(3) authorizes service by publication "[w]here by law personal service is not required...." According to the State Bar Committee Note to Rule 4(e), the drafters of the statute did not attempt to determine when personal service is required because "[t]his question is one of constitutional law which it has seemed impractical to attempt to solve by rule."

We must therefore decide whether obtaining *in personam* jurisdiction by service

through publication and reasonable diligence in attempting to personally serve the defendant offends the due process clause of the Constitution.[4] In *Knight v. Mewszel,* 3 Ariz.App. 295, 413 P.2d 861 (1966), the Court of Appeals held that *in personam* jurisdiction could not be obtained over a nonresident motorist by service by publication, Rule 4(e)(3). According to the court, this is true even if the plaintiff diligently searches for an elusive defendant. *Id.* at 297, 413 P.2d at 863. The same result also obtains even if the defendant willfully evades service of process. *Id. See also O'Leary v. Superior Court,* 104 Ariz. 308, 312–13, 452 P.2d 101, 105–06 (1969) (Rule 4(e)(3) applies only to *in rem* or *quasi in rem* actions).

We believe that the time has come to overrule these cases. It is apparent from the State Bar Committee Note to Rule 4(e) that the court intended to permit service by publication as far as the Constitution allows. In refusing to determine "where personal service is required," we believe the court intended to also permit the range of service by publication to expand as necessity demands.

In addressing the requirements of due process, the Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), declared that there must be a reasonable probability that the method of notice will inform the affected parties. The court further stated, however, that

[t]his Court has not hesitated to approve of resort to publication ... where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights.

---

4. In *Mervyn's, Inc. v. Superior Court,* 144 Ariz. 297, 697 P.2d 690, 693 (1985), we noted that in

Arizona, traditionally an *in personam* judgment required personal service.

*Id.* at 317, 70 S.Ct. at 658, 94 L.Ed. at 875. *See also Walker v. Hutchinson,* 352 U.S. 112, 115–16, 77 S.Ct. 200, 202, 1 L.Ed.2d at 178, 182 (1956); *Schroeder v. New York,* 371 U.S. 208, 212–13, 83 S.Ct. 279, 282, 9 L.Ed.2d 255, 259 (1962); *cf. McDonald v. Mabee,* 243 U.S. 90, 92, 37 S.Ct. 343, 344, 61 L.Ed. 608, 609–610 (1917) (suggestion that delivery of notice to last usual place of abode after the defendant has left for another state may be constitutional).

We note first that, contrary to the announced rule in *Knight v. Mewszel, supra,* the prevailing view is that service by publication is constitutionally sufficient where the defendant willfully leaves the state to evade service of process. *See* 62 Am. Jur.2d *Process* § 70 (1972); 72 C.J.S. *Process* § 56b (1951).

Additionally, other courts have authorized *in personam* jurisdiction over a nonresident motorist who cannot be located with due diligence through service by publication. *See Krueger v. Williams,* 410 Mich. 144, 300 N.W.2d 910, 917–18 (1981); *Cradduck v. Financial Indemnity Corp.,* 242 Cal.App.2d 850, 52 Cal.Rptr. 90 (1966); *Rasmussen v. Vance,* 34 Ohio Misc. 87, 293 N.E.2d 114 (Ohio App.1973). *Cf. United National Bank v. Searles,* 331 N.W.2d 288, 291 (S.D.1983); Comment, Court Ordered Service of Process, 33 Alb.L.Rev. 330 (1969); Comment, Service by Publication of a Defendant Who Cannot be Located in California, 3 U.S.F.L.Rev. 320 (1969); Note, Constitutionality of Constructive Service of Process on Missing Defendants, 48 N.C.L. Rev. 616 (1970), Comment, Personal Jurisdiction over Absent Natural Persons, 44 Cal.L.Rev. 737 (1956); 62 Am.Jur.2d *Process* § 73 ("According to the prevailing view, a personal judgment may be rendered against a resident of the state who has been notified by means of service by publication and provided it appears that actual service could not be made . . .").

Finally, we note that the insurer received prompt notice of the lawsuit in this case. The insurer arguably has more at stake in the present lawsuit than the named defendant. The insurer concedes that there are no questions relating to whether the accident or the insured is covered by the insurance policy. Although the default judgment may be overturned on remand, the present judgment is within policy limits. There has been increasing recognition of the insurer as the real party in interest in these types of lawsuits. *See* Bailey & Bailey, *Joinder of Insurance Companies: Arizona's Changing Policy,* Ariz.St.L.J. 225, 226 (1978). Courts have even allowed the plaintiff to serve the insurer where the named defendant cannot be located. *See* Annot., *Validity of Substituted Service of Process Upon Liability Insurer of Unavailable Tortfeasor,* 17 A.L.R. 4th 918 (1982); Appleman, *Insurance Law & Practice* § 11564 (1980); Note, *supra,* 48 N.C.L. Rev. at 625; Note, Substituted Service on Nonresident Motorist Liability Insurance Carrier, 11 S.C.L.Q. 385 (1958).

We concede that the insurer may be prejudiced by the absence of the named defendant, especially if the defendant doesn't cooperate in the defense of the insurer's claim. The degree of prejudice is a factor the trial court may consider in requiring more or less diligence in attempting to serve the defendant. However, we believe that a lawsuit should not be halted by the simple expedience of leaving the state and avoiding service of process. Evading substituted service of process is not at all difficult to do. *See* Note, Service of Process by Mail, 74 Mich.L.Rev. 381, 393 (1975) (includes a tortfeasor's guide on evading service of process by mail).

Even in cases wherein the action may be tolled by the absence of the defendant, *see* A.R.S. § 12–501, this postpones recovery for an injured plaintiff and makes the case more difficult to prove because evidence may be lost and witnesses' memories fade. *See* Comment, *supra,* 44 Cal.L. Rev. at 742. Often, the defendant's absence cheats justice, and both the defendant and the insurer receive a windfall by a lawsuit dismissed for lack of service of process. In particular, even if the defendant is not willfully evading service of process, the insurer and insured defendant

gain a windfall because of the defendant's negligent conduct in leaving without providing a forwarding address. As the court noted in *Cradduck v. Financial Indemnity Co.*, 52 Cal.Rptr. at 96–97:

It is true that a defendant who is secreting himself is in a morally inferior position to one who cannot be found after due diligence. It does not follow that only the former is vulnerable to a personal judgment after published summons. Due process requires no more than "fair notice."

It is, of course, not altogether easy to believe that it slipped Dallas' mind that she was involved, a short time before she left town, in a car accident that caused extensive damage to both cars and sent all participants involved to the hospital. The absent defendant also may often set aside the default judgment on a proper showing of excusable lack of notice and no intent to evade process pursuant to Rule 60. *See also* Rule 59(j).

■ Finally, we acknowledge that it is critical to insist upon a showing of reasonable diligence before service by publication is appropriate. As the United States Supreme Court remarked about the efficiency of service by publication,

It would be idle to pretend that publication alone ... is a reliable means of acquainting interested parties of the fact that their rights are before the courts. It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. at 315, 70 S.Ct. at 658, 94 L.Ed. at 874. *See also* Restatement (Second) of Judgments § 2 comment g

("The rule in Mullane v. Central Hanover Bank & Trust Co. recognizes that persons can be bound even if they cannot be found through reasonably diligent search. Assuming that such a search has been made, the fiction is indulged that publication notifies the absentee.... It is the search for the absentee that gives expression to the concern for the protection of his opportunity to be heard [rather than the notice by publication] ... publication of notice is a ceremony whose performance assures that the termination of the absentee's rights is not done in secret."). *Cf. Dobkin v. Chapman*, 21 N.Y.2d 490, 236 N.E.2d 451, 460, 289 N.Y.S.2d 161 (1968) (upheld service on an unavailable motorist by attempted mailings and publication but noted that the publication added little of value). Precisely because the potential for abuse of Rule 4(e)(3) by allowing *in personam* jurisdiction to be obtained by the ritual of service by publication, we shall limit its use to cases involving absent nonresident motorists wherein the insurer is on notice of the lawsuit. Although this distinction may be artificial, we reserve the right to balance the burdens and the benefits of liberalizing the requirements for service of process in other areas of the law.

■ We note that because petitioner did not remain satisfied with mere service by publication, it is considerably easier to uphold the constitutionality of the service of process in the present case. Apparently, the trial court found that petitioner had exercised due diligence in serving Dallas. We find no error in the service of process in this case.

The memorandum decision of the Court of Appeals is vacated. The matter is remanded for further proceedings consistent with this opinion.

GORDON, V.C.J., and FELDMAN, J., concur.

HOLOHAN, Chief Justice, dissenting.

I dissent.

CAMERON, Justice, concurring.

I concur in the dissent of Chief Justice Holohan.